REID, Judge.
Edwards J. Porche, Jr., and his wife 'Marjorie Mclntire Porche filed this suit •against Collise Cherry, J. L. Kolb, d/b/a J. L. Kolb Trucking Company, and its insurer, The Employers Mutual Liability In--rsurance Company of Wisconsin for the sum of $15,480.00 for plaintiff Edward J. Porche, Jr., and $15,000.00 for plaintiff Marjorie Mclntire Porche for the wrongful death of their son, Edward J. Porche III, who was killed by being run over by a truck owned by J. L. Kolb Trucking Company and driven by Collise Cherry. They allege the accident happened on August 8, 1956 on Louisiana Highway 20, on a bridge crossing Bayou Tiger, near Gibson, in the Parish of Terrebonne, Louisiana.
The plaintiffs further allege the sole and proximate cause of the accident was the negligence of Collise Cherry, the driver of the defendant truck as follows:
“a. Operating the vehicle at an unlawful and excessive rate of speed, i. e. in excess of 45 miles per hour as was posted in the area.
“b. Failing to keep proper lookout.
“c. Failing to keep his vehicle under proper control.
“d. Failing to operate his vehicle in a careful and prudent manner.
“e. Striking and killing the child, Edward J. Porche III.
“f. Failing to avoid the child once he became, or should have become aware of his presence.
“g. Such other acts or failures that may be proved.”
Each parent seeks the sum of $15,000.00 for the loss, love and affection of their son, together with their own grief and loss and in addition to plaintiff Edward J. Porche, Jr., asks for the sum of $480.00 for funeral expenses and ambulance services of his deceased son.
The defendants filed an answer admitting the occurrence of the accident and the policy of liability insurance, but denied liability and further answering deny the accident was caused or contributed to by the negligence of Cherry, the driver of the Kolb truck and contending the accident occurred through the negligence and recklessness of the decedent in negligently run *92 ning, jumping, or falling in front of the truck at a time, and under such circumstances when the operator of the truck could not avoid a collision, although he tried to do so. They alternatively plead contributory negligence on the part of the deceased, and contributory negligence on the part of the plaintiffs in allowing their son to play near the Highway and not taking proper care or caution in controlling the actions of their son.
The case was tried and the Judge of the Lower Court rendered judgment in favor of the plaintiff, Edward J. Porche, Jr., in the sum of $10,480.00 and Mrs. Edward J. Porche, Jr., in the full sum of $10,000.00 against the defendants, jointly and in solido.
From this judgment the defendants appealed, and plaintiffs answered the appeal asking the award be increased to $15,000.00 to Marjorie Mclntire Porche and to $15,-480.00 for Edward J. Porche, Jr.
The appellants complained of the following errors by the Trial Court:
“I. In holding that Cherry was negligent basing this negligence as it did on the failure of said Cherry to ferret out this little boy playing on the railing of the bridge and in further holding that the said Cherry did not take proper steps to avoid the accident, and in further holding that the said Cherry was driving his vehicle at an illegal rate of speed.
“II. In failing to find that the deceased was contributorily negligent.
“III. In holding that under all the circumstances the said Cherry could, and should, have avoided the accident.”
The facts disclose that on August 8, 1956 at about 7:00 P.M. Edward J. Porche III who was about seven years old was killed on the bridge over Bayou Tiger near Gibson, Louisiana on Highway 90 by a truck owned by J. L. Kolb Trucking Company, operated by Collise Cherry. The time was about dusk, or a little after dark, the night was clear and visibility good.
There were two trucks owned by J. L. Kolb Company proceeding east of Louisiana Highway 20 (U. S. Highway 90) on the night of the accident. The first truck was operated by one Ernest Smith, who was driving a truck-trailer and was coming from Morgan City en route to Thibo-deaux, Louisiana. The second truck was without a trailer and was following the truck driven by Smith a short distance in the rear. Smith had experienced trouble with his truck and the Kolb Trucking Company sent Cherry out with another truck to assist Smith, and if necessary to attach the trailer to his truck and come on in to New Orleans.
There was a turn about 300 or 400 feet west of the bridge. The bridge was visible from at the most 300 feet, and visibility increased as one neared the bridge. There was a walkway on the north side of the bridge about 3 feet wide with a railing about V/2 feet high to protect the walkway. The little Porche boy was on the bridge and there is no evidence exactly as to what he was doing or where he was on the bridge immediately prior to the accident. The first truck driven by Smith had to swerve to the left to go around the child. Cherry the operator of the following truck testified he saw the first truck swerve to the left and knew something had caused the driver to do so. However, when the truck straightened out he paid no further attention to it. He saw the boy when he was about 20 feet from him and applied his brakes, skidded to the left to avoid striking the boy but unfortunately failed to do so. The left front fender struck the child and killed him.
The bridge where the accident occurred is about 143 feet 9 inches long, the roadway of the bridge is flat and is 24 feet wide, the blood spot, which the witnesses testified was the point of impact, was about 24 feet from the eastern or Thibodeaux end *93 of the bridge, or 29 feet from the eastern end or flare out portion of the bridge.
There were only two witnesses to the accident, Smith and Cherry, drivers of the two trucks. Smith testified when he first saw the boy he was about 25 feet from him, and “he was up on the rail but it seemed as though he was not standing straight on the rail.” “It appeared he was going to fall off, or was off balance in a crouch. He leaned over.” Smith said he was traveling about 40 miles an hour and that he first saw the bridge when he was 100 feet from it. He also testified when he discovered the boy he straddled the middle line of the Highway and got safely around him. After he passed he looked in his right mirror and watched him continuously. At that time he said Cherry was about a city block behind him. After the accident he turned around and parked his truck on the north side of the Highway and went to assist Cherry. Smith further testified he was afraid something would happen to the boy, and he saw the truck driven by Cherry hit him.
Cherry, the driver of the following truck and the one who hit the boy testified he was about a block or a block and a half from the lead truck and his lights were bright and in good condition. He said he was going 40 or 42 miles an hour. He stated he could see the bridge about three-quarters of a block away. He saw the boy when he was about 25 or 30 feet from him. He testified, “When I first saw the little boy' he was jumping or running across the little rail. I don’t know if he jumped off it running, or was up on it, and was running but that’s the first flash I saw was a movement going to the center of the street to cross it”. He also testified, “When I first saw him on the bridge when I got, I should say 20, 25, or 30 feet thereabouts to him that’s when I first saw him in a jumping motion to cross the highway. I started breaking speed. That’s when I first applied brakes more than any time else when he was going to the left. I came close as I could to the rail on my right, and when I got to the center or thereabouts in the street, in the other side of the lane, I should say, I was still breaking speed and holding to the right, and he made just a sharp turn and came right back from the left, came right back from the left back to the right, which brought him into the front fender of the vehicle I was driving.”
Skid marks were found approximately 40 feet west of the blood spot where the body was found. The body was found in the left or north lane going east about 24 feet west of the east end of the bridge. Cherry drove his truck on off the bridge and parked on the north side of the Highway about opposite a lane leading to the railway depot. Immediately after stopping his truck Cherry ran back on the bridge hollering for help and to keep traffic from running over the child. Three mén by the name of Sick who lived nearby, and Mr. Jeter were the first to arrive at the scene of the accident. Shortly afterwards Mr. Porche, the father, arrived, but the child was dead at that time.
There is some testimony in the record concerning the length of the skid marks of Cherry’s .truck. There are also numerous photographs in the record which give a good picture of the scene of the accident. The Trial Judge concluded from these photographs and the physical evidence that Cherry should have seen the boy and he was negligently operating his truck at an excessive rate of speed and therefore he and his employer were liable. With this conclusion of our learned brother we cannot concur. We do not believe that Cherry could be reasonably expected to ferret out, or see, a small venturesome child playing on, or jumping off of a railing which was put there as a guard to separate a fast traveled roadway from pedestrians. There was nothing to alert any motorist of the possibility of children playing on the bridge in the night time.
W.e realize that motorists have a duty to-be careful of children on or around a public road, but we fail to see where one could ex *94 pect to meet a child playing on this bridge at that time of night.
In this respect we feel that the recent case decided by our brothers of the Second Circuit, namely, Hudson et ux. v. Byers et al., La.App., 73 So.2d 596 (1954) is in point. In this case a four year old child dashed in front of oncoming automobile in the night time accompanied by two other children. Describing the liability of motorist toward children the Court said:
73 So.2d page 598:
“ * * * The general rule is properly stated in Blashfield’s Cyclopedia of Automobile Law and Practice, Perm. Ed. Vol. 2A, Par. 1498:
“Drivers or owners of motor vehicles are not insurers against all accidents wherein children are injured. Accordingly, a driver proceeding along a street or highway in a lawful manner using ordinary and reasonable caution for the safety of others, including children, will not be held liable for striking a child whose presence in the street could not reasonably be foreseen. He is not required to anticipate the appearance of children in his pathway, under ordinary circumstances, from behind parked automobiles or other obstructions.
“Thus, when a motor vehicle is proceeding upon a street at a lawful speed, and is obeying all the requirements of the law of the road and all the regulations for the operation of such machine, the driver is not generally liable for injuries received by a child who darts in front of the machine so suddenly that its driver cannot stop or otherwise avoid injuring him.”
And 73 So.2d at page 599:
“As tragic as was this child’s death, we are convinced the accident was due to the sudden, unforeseen act of this child and the defendant did not know, or did not have reason to anticipate the child was going to suddenly run in front of the automobile, and plaintiffs cannot recover under such circumstances. The law does not impose any duty on the individual to guard against sudden, unforeseen, and not reasonably to be anticipated acts of another.”
Applying the law in the Hudson case, supra, with the case at bar we do not find that Cherry, the driver of the truck involved in the accident, was negligent. In view of this finding it is unnecessary to discuss pleas of contributory negligence on the part of the child or the father.
For the foregoing reason it is ordered, adjudged and decreed that the judgment of the Lower Court be reversed and judgment be now rendered in favor of defendants against the plaintiffs, rejecting plaintiffs’ demands and dismissing this suit at their costs.
Reversed and rendered.